# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-60795

United States Court of Appeals
Fifth Circuit

**FILED**
August 12, 2020

Lyle W. Cayce
Clerk

ANTONIO L. JOHNSON,

      Plaintiff - Appellant

v.

VT HALTER MARINE, INCORPORATED; DAVID NEWELL, in individual and official capacity; RUSSELL WOODWARD, in individual and official capacity; CECIL MAXWELL, in individual and official capacity; ZACHARY ANDERSON, in individual and official capacity,

      Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:17-CV-340

Before HIGGINBOTHAM, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:*

Plaintiff Antonio Johnson challenges the district court's dismissal on summary judgment his suit for hostile work environment, intentional discrimination, and retaliatory discharge under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-60795

## I

In April 2010, Johnson, who is African American, began working as a contract worker with VT Halter Marine, Inc. ("VT"), which owned and operated three shipyards. In November 2012, Johnson was hired by VT as a full-time employee and was assigned to work as a tool room attendant, issuing tools, equipment, and supplies to workers engaged in vessel construction. Johnson maintains that between 2013 and 2017, he was disrespected or harassed by several white employees of VT.

First, citing a VT policy, Johnson refused to issue a box of earplugs to Nathan Shepard, a VT employee, in September 2013. Angered, Shepard threw two pairs of earplugs at Johnson. Later, Shepard and Johnson reconciled, and Johnson chose not to file an HR complaint. In July 2014, when Johnson told Cecil Maxwell that under VT policy, Maxwell could not retain a subordinate's brass washer, he threw a brass washer at Johnson. Johnson notified HR but declined to file a formal complaint.

In October 2014, after Johnson refused to check out a torch tip to Zachary Anderson, Anderson threw a torch tip and soapstone at Johnson. Neither of these small, light items hit Johnson. Johnson filed a formal complaint with HR, which conducted an investigation and then wrote up and reprimanded Anderson. Johnson later complained to HR that another employee, Russell Woodward, hurled profanities at him. According to Johnson, the HR manager told him, "[T]hat's just shipyard talk."

In March 2017, when Johnson would not issue a VT employee a rope without authorization from a superintendent, the employee called David Newell, a superintendent, to provide the required authorization. The employee put the call on speaker so that Johnson could hear Newell give the authorization. Instead, Newell allegedly said, "Who's there, that black n-----?" When Johnson asked what Newell had just said, the employee responded: "He

2

asked who was there, the black dude?" Johnson and another employee who witnessed the exchange promptly reported the incident to HR, which conducted an investigation, suspended Newell without pay for three days, and issued a written warning.

Meanwhile, in 2016, VT closed two of its three shipyards and in 2017, laid off nearly one hundred employees. Under VT's policy, it first identified non-essential jobs that could be eliminated. Then, if more than one employee performed a job that was to be eliminated, the most junior employee was laid off unless another employee had been disciplined within the last year.

According to VT, it decided that one of the three tool room attendants was non-essential, and on March 5, 2017, concluded that it would lay off Johnson because he was the most junior attendant and the two other attendants had not been disciplined during the last year. Although VT planned to let Johnson go on May 5, 2017, they ultimately terminated his employment on May 4 after he refused to perform a job assigned by his supervisor.

After exhausting the administrative process, Johnson filed the instant suit against VT, Anderson, Maxwell, Newell, and Woodward. The district court granted Defendants' motion for summary judgment on all claims. This appeal followed.

## II

We review a grant of summary judgment *de novo*.[1] Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2]

---

[1] *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016).
[2] FED. R. CIV. P. 56(a).

3

No. 19-60795

## III

Johnson asserts three claims under 42 U.S.C. § 1981 and Title VII: hostile work environment, intentional discrimination, and retaliation.[3] Although he asserts each claim against VT and the individual defendants, his brief on appeal does not respond to the district court's holdings regarding the individual defendants. In so doing, Johnson forfeited his claims against them, and we consider his appeal only as to VT.[4]

### A

Johnson asserts that his white coworkers harassed him because of his race, thereby creating a hostile work environment. To state a hostile work environment claim under Title VII, a plaintiff must show that he:

> (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[5]

When harassment occurs, a defendant may avoid Title VII liability by taking "prompt remedial action . . . reasonably calculated to end the harassment."[6] The suitability of the remedial action "necessarily depend[s] on the particular facts of the case—the severity and persistence of the harassment, and the effectiveness of any initial remedial steps."[7] We have

---

[3] Because employment discrimination claims brought under § 1981 "are analyzed under the evidentiary framework applicable to claims arising under Title VII," we consider Johnson's § 1981 and Title VII claims together. *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999).

[4] *See Norris v. Causey*, 869 F.3d 360, 373 n.10 (5th Cir. 2017) (noting that failure to adequately brief an argument forfeits the claim).

[5] *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).

[6] *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 615 (5th Cir. 1999) (cleaned up).

[7] *Hirras v. Nat'l R.R. Passenger Corp.*, 95 F.3d 396, 399–400 (5th Cir. 1996).

previously concluded that an employer took "prompt remedial action" when "[i]t took the allegations seriously, it conducted prompt and thorough investigations, and it immediately implemented remedial and disciplinary measures based on the results of such investigations."[8]

Johnson first points to his altercations with Shepard, Maxwell, Anderson, and Woodward, but identifies no evidence that the harassment was based on race. He then argues that Newell harassed him when he called Johnson a racial epithet. But when Johnson filed a complaint with HR, VT conducted a prompt and thorough investigation, quickly suspended Newell for three days without pay, and issued him a written warning. Johnson offers no evidence of a deficient or delayed investigation. Nor has he briefed an argument that the suspension was insufficient. We therefore conclude that Johnson's hostile work environment claim fails.

**B**

Johnson claims that he was terminated either because of race or in retaliation for his complaint to HR about Newell. For a claim of intentional discrimination, a plaintiff must demonstrate that he "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group."[9] For a retaliation claim, the plaintiff must show that "(1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action."[10]

---

[8] *Carmon v. Lubrizol Corp.*, 17 F.3d 791, 795 (5th Cir. 1994).

[9] *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam).

[10] *Id.* at 557.

No. 19-60795

As Johnson provides no direct evidence of racial discrimination or retaliation playing a role in his termination, we apply the *McDonnell Douglas* burden-shifting framework to both claims.[11] Under this framework, the plaintiff "carr[ies] the initial burden under the statute of establishing a prima facie case of racial discrimination."[12] Once the plaintiff has met this burden, it "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection."[13] If the employer has articulated such a reason, then the plaintiff must show that the stated reason "was in fact pretext."[14]

It is undisputed that Johnson, a member of a protected group, was qualified for his position and was subjected to an adverse employment action when he was fired less than two months after filing an HR complaint about the use of a racial epithet. The parties therefore agree that Johnson has made out a prima facie case for retaliation, and we assume *arguendo* that he has made one out for intentional discrimination as well.

In response, VT claims that it terminated Johnson as part of a large batch of layoffs and adhered to its policy of laying off workers by seniority. Johnson does not dispute that VT has produced a legitimate, non-discriminatory reason for his termination.

---

[11] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). To be sure, Newell called Johnson a uniquely deplorable racial slur. But there is no evidence that Newell played any role in the decision to terminate Johnson. *See Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 653 (5th Cir. 2004).

[12] *McDonnell Douglas*, 411 U.S. at 802.

[13] *Id.*

[14] *Id.* at 804. A plaintiff stating a discrimination claim may show either that the employer's stated reason was pretext or "that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive[s] alternative)." *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (quoting *Rishel v. Nationwide Mut. Ins. Co.*, 297 F. Supp. 2d 854, 865 (M.D.N.C. 2003)).

No. 19-60795

Rather, he attempts to establish pretext. He first argues that "VT hired new employees before, during, and after Johnson's termination." But VT hired workers only in those job classifications needed to complete existing vessel construction projects: skilled electricians, shipfitters, specialty welders, and security personnel. Moreover, they did not hire a new tool room attendant or tool room repairer for over eighteen months after Johnson's termination.

Johnson then points to his testimony that, shortly after VT terminated nine employees in January 2017, the vice president of production told him his job was secure because staffing was at its "minimum in the Tool Room." But this lone statement made five months before Johnson's discharge creates at most "a weak issue of fact as to whether [VT's] reason was untrue."[15] It is not enough to establish pretext in light of the "abundant and uncontroverted evidence that no discrimination had occurred," namely the closing of two shipyards, the termination of nearly one hundred employees, and the fact that VT did not hire a new tool room attendant for over eighteen months after terminating Johnson. We therefore affirm summary judgment for VT Halter on Johnson's discrimination and retaliation claims.

## IV

For the reasons set forth above and as stated in the district court's opinion, we affirm the district court's dismissal of Johnson's suit.

---

[15] *Price v. Fed. Exp. Corp.*, 283 F.3d 715, 724 (5th Cir. 2002) (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 148 (2000)).